## TRANSCOUNTRY PACKING CO., INC.
### v.
### The UNITED STATES.
### No. 330–76.

United States Court of Claims.

Jan. 25, 1978.

---

**5.** § 6101. Basic 40-hour workweek; work schedules; regulations

    *    *    *    *    *    *

(b) * * *

Frederick C. Williams, Boston, Mass., for plaintiff, Constantine Alexander, Boston, Mass., attorney of record, Nutter, McClennen & Fish, Boston, Mass., of counsel.

Vincent M. Garvey, with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before LARAMORE, Senior Judge, and NICHOLS and KASHIWA, Judges.

## ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This case is before the court on defendant's motion for judgment on the pleadings, plaintiff's opposition thereto, and plaintiff's motion for summary judgment. In its motion for judgment on the pleadings, defendant contends the petition does not state a claim within this court's jurisdiction and that it fails to state a claim upon which relief can be granted. For jurisdictional reasons, we grant defendant's motion for judgment on the pleadings and deny plaintiff's motion for summary judgment.

In this action plaintiff is seeking damages allegedly incurred by it due to the Defense Supply Agency's (DSA) suspension of plaintiff from further contracting and the rejection by DSA of a bid submitted by plaintiff.

This case stems from a 1975 meat procurement scandal involving a Boston meat packing firm which operated as G & G Packing Company, Inc. (G & G). On December 8, 1975, G & G was formally suspended by DSA from further contracting with it for the supply of meat due to the fraudulent and possible criminal activities of G & G and its employees or agents. Plaintiff is a corporation which was formed in January 1976 to take advantage of the potential business opportunity presented by the cessation of operations by G & G. Soon after its formation in January 1976, plaintiff entered into various preliminary contracts and arrangements with the landlord of the premises previously occupied by G & G, meat suppliers, the owners of the G & G equipment, and members of a union, all contingent upon plaintiff's obtaining approval by DSA as a qualified bidder for meat contracts.

During January and February 1976, a preaward survey was conducted by DSA and during this time Frank Ravasini and

William Johnson[1] were identified as employees holding responsible positions with plaintiff. DSA officials made no objection to the employment of these two individuals during the preaward survey. On March 17, 1976, plaintiff was awarded contract DSA 13H–76–C–B48H for 32,000 lbs. of meat. (Hereinafter plaintiff's first bid and award will be referred to as Bid I.) Under the Armed Services Procurement Regulations, the award of this contract to plaintiff by the contracting officer constituted an affirmative determination that plaintiff was "responsible" within the meaning of 32 C.F.R. § 1–902 (1975). 32 C.F.R. § 1–904.1 (1975).

Subsequently, plaintiff submitted a second bid under RFP DSA 13H–76–R–3441, which was the low bid. (Hereinafter plaintiff's second bid will be referred to as Bid II.) On April 2, 1976, plaintiff was advised that this contract was to be awarded to another bidder because plaintiff was "nonresponsible." Further, plaintiff was advised that pursuant to 32 C.F.R. § 1–605 (1975), it was to be suspended from contracting with DSA along with Frank Ravasini and William Johnson. Plaintiff was suspended on April 7, 1976, and subsequently liquidated.

In its petition plaintiff alleges that the DSA's actions, in granting and then withdrawing plaintiff's qualified contractor status, were unlawful. Specifically, plaintiff states:

> * * * DSA knew, or ought to have known, that the investigations in progress had or would develop evidence indicating that Frank Ravasini and William Johnson would or might be implicated with complicity in the irregularities and illegal acts alleged to have been committed by G & G and its officers and some of its employees.

Plaintiff further asserts that:

> By its acts and omissions as alleged herein DSA acted arbitrarily, capriciously, without reasonable basis, and in violation of the [Armed Services Procurement Regulations], specifically 32 C.F.R. §§ 1.605, 1.605–1, and 1.605–2(b)(1) and (3), in (1) not timely informing Transcountry that it considered the employment of Ravasini and Johnson grounds for nonapproval as a qualified bidder, (2) first granting and then precipitously withdrawing approval, thereby causing Transcountry to make firm business commitments which it could not then satisfy;[2] * * * (4) precipitously withdrawing approval without allowing Transcountry a transition period of a few weeks in which to obtain replacements for the suspect employees while being able to meet business commitments which DSA's actions had induced it to make.

As a result of DSA's allegedly unlawful conduct, plaintiff contends it has damages amounting to $500,000 for the following:

> * * * for organizing expenses; for expenses incurred in undergoing preaward survey; for expenses involved in preparation of the second bid; for extra wages to employees subsequent to the first contract and prior to termination of operations; for expenses for the termination of the occupation of G & G's former premises; for loss on the contract for purchase of the machinery and equipment from G & G; for legal fees incurred in the establishment of Transcountry and during the conduct of the preaward survey; for other damages incurred in setting up Transcountry and bidding; and for the expenses and attorneys' fees resulting from the prosecution of this action.

William Johnson, we do not consider whether plaintiff's relationship with Steven Goldberg would justify defendant's actions in this case.

1. In the pleadings and briefs, another individual, Steven Goldberg, was also involved. At oral argument defendant stated the suspension of plaintiff from qualified bidder status was in no way based upon plaintiff's relationship with Steven Goldberg. Since defendant seeks to justify its suspension of plaintiff solely on the plaintiff's relationship to Frank Ravasini and

2. The third item involved plaintiff's relationship with Steven Goldberg which we are not concerned with here. See note 1.

Defendant's motion for judgment on the pleadings presents the basic question of whether the petition states a claim within the jurisdiction of this court. Since we find the jurisdictional issue controlling, we do not consider the other issues raised by the parties.

■■■ This court's jurisdiction is founded upon the Tucker Act, 28 U.S.C. § 1491 (1970),[3] which allows judgment to be rendered upon claims founded upon the Constitution, statutes, regulations, or any express or implied contract. This court is a court of limited statutory jurisdiction which cannot be expanded beyond the bounds established by the Congress. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Carney v. United States,* 462 F.2d 1142, 1144, 199 Ct.Cl. 160, 162 (1972). It does not have jurisdiction over tort claims. *Somali Development Bank v. United States,* 508 F.2d 817, 205 Ct.Cl. 741 (1974). Its jurisdiction over implied contracts extends only to implied-in-fact and not implied-in-law contracts. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925); *Algonac Manufacturing Co. v. United States,* 428 F.2d 1241, 1256, 192 Ct.Cl. 649, 674 (1970). Although it has jurisdiction over claims founded upon statutes or regulations, it cannot base an award of damages on a statute or regulations unless it can fairly be interpreted as mandating compensation by the Federal Government. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 1008–1009, 178 Ct.Cl. 599, 607 (1967).

We first consider plaintiff's allegations that its claim arises out of contractual dealings with the DSA and, therefore, is within this court's jurisdiction. Plaintiff makes no allegation that its claim is based upon an express contract. Plaintiff instead relies upon a line of cases which follow an implied-in-fact contractual theory. *Heyer*

Products Co. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956); *Keco Industries, Inc. v. United States,* 428 F.2d 1233, 192 Ct.Cl. 773 (1970); *Continental Business Enterprises, Inc. v. United States,* 452 F.2d 1016, 196 Ct.Cl. 627 (1971); *McCarty Corp. v. United States,* 499 F.2d 633, 204 Ct.Cl. 768 (1974); *Armstrong & Armstrong, Inc. v. United States,* 514 F.2d 402 (9th Cir. 1975); and *Scanwell Laboratories, Inc. v. Thomas,* 172 U.S.App.D.C. 281, 521 F.2d 941 (1975).

In *Heyer, supra,* the plaintiff alleged the bidding procedure followed by the Government was a mere sham to conceal an intention to let the contract to a favored bidder. There, the plaintiff's bid was the low bid but was rejected and the contract was awarded to the seventh lowest bidder. This court held in *Heyer* that the invitation for bids and the bid created an implied-in-fact contract that all bids would be honestly considered by the Government and not "wantonly disregarded." Further, that if the plaintiff could prove that the Government had breached that obligation, it was entitled to recover its bid preparation costs, but not its anticipated profits. In *Keco Industries, supra,* this court extended the *Heyer* rule to situations where the Government's conduct was something less than "wanton disregard" in making the award to another contractor. There, this court stated:

> * * * [We] find that *Heyer* stated a broad general rule which is that every bidder has the right to have his bid honestly considered by the government, and if this obligation is breached, then the injured party has the right to come into court to try and prove his cause of action. [*Keco Industries, supra,* 428 F.2d at 1237, 192 Ct.Cl. at 780.]

■■■ We believe plaintiff's cause of action falls outside the ambit of the bid award protest cases cited above. In regard to Bid I, plaintiff was awarded the contract on

---

**3.** § 1491. "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or

upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." * *

March 17, 1976, in response to its bid. Plaintiff's real complaint is that defendant should not have awarded plaintiff this contract, because the DSA officials should have known that the plaintiff was "nonresponsible." We have found no case and have been cited to no case in which the *Heyer* implied contract theory has been extended to allow a successful bidder to maintain a suit on the grounds that he should not have been awarded the contract. Nor are we prepared to so extend the doctrine.

Plaintiff was the low bidder on the Bid II contract, but was not awarded the contract for it was not a responsible bidder. With regard to Bid II, plaintiff makes no contention that the DSA's determination of nonresponsibility was incorrect. In fact, plaintiff admits that Ravasini and Johnson were employed by it, that both were ultimately found to have been involved in the fraudulent and/or criminal activities of G & G, and that both held important and responsible positions with the plaintiff. Thus, there was a clear rational basis for DSA's determination that plaintiff was nonresponsible, for it lacked responsible key employees.

■ Upon close analysis, plaintiff's complaint about Bid II is a mere variation of its complaint involving Bid I. Its Bid II allegation is basically that since the DSA officials should have known that plaintiff was nonresponsible at the time Bid I was awarded, and since they acted wrongly in awarding plaintiff the first contract, defendant has the duty of not precipitously revoking the qualified bidder status of plaintiff, even when there are clear grounds for the agency's finding of nonresponsibility. For this court to hold that this allegation states a claim within our jurisdiction, we would have to extend the *Heyer* and *Keco Industries* cases to a situation where a successful bidder is awarded a contract that he later claims should not have been awarded to him; thus, imposing the further obligation on the Government of not precipitously withdrawing qualified bidder status

at a later date. We have already stated that we are not prepared to so extend the *Heyer* and *Keco Industries* cases.

In the alternative, plaintiff invokes this court's jurisdiction based upon DSA's alleged violation of the Armed Services Procurement Regulations. Here, plaintiff relies on the holding in *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). In *Scanwell* the plaintiff was seeking a declaratory judgment against the Federal Aviation Administration (FAA) on the ground that the FAA had violated the Federal Procurement Regulations promulgated under the Administrative Procedures Act. There, the D.C. Circuit Court of Appeals held, for the first time, that plaintiff had standing to sue the FAA for violating the procurement regulations on the basis of a private attorney general theory.[4]

In *Keco Industries, supra,* this court adopted the *Scanwell* rule. There, this court stated:

> We are persuaded by this very thorough presentation in *Scanwell* that the law, as it now stands, supports plaintiff's position, allowing it the right to maintain this action. We cannot agree with defendant's argument that *Scanwell* must be limited only to those cases in which plaintiff is seeking to void the award of a contract. The holding of *Scanwell* is *broad enough to grant standing to a party seeking personal money damages* as well as to one acting as a quasi attorney general for the benefit of the public. Regardless of the fact that plaintiff in the instant case is seeking money damages, it is still requiring the government to enforce its regulations fairly and honestly and treat all bidders without discrimination. [Emphasis added.] [*Keco Industries, supra,* 428 F.2d at 1238, 192 Ct.Cl. at 781.]

However, we find *Scanwell* inapposite to the case before us. Here, the DSA officials did not violate the regulations in determin-

4. In so doing, the Circuit Court undertook an extensive review of the law of standing and found that the Supreme Court case *Perkins v.* *Lukens,* 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), had been legislatively overruled.

ing that plaintiff was nonresponsible at the time Bid II was being awarded, for plaintiff lacked responsible key employees.

Plaintiff's real complaint is that it should never have been awarded the first contract by DSA. In its brief it contends the awarding of that contract was in violation of 32 C.F.R. § 1–905.1(b) (1975).[5] However, we find nothing in the record before us to show that the DSA officials did not comply with section 1–905.1. Plaintiff does not allege that prior to the award of the Bid I contract defendant's agents had suspended Frank Ravasini or William Johnson or that these two individuals' suspension was inevitable. Plaintiff merely asserts that because Ravasini and Johnson had both held key positions with G & G and since G & G was suspended and a criminal investigation instituted involving G & G's activities, defendant should have known that plaintiff had bad employees which would make it nonresponsible.

■ The gist of plaintiff's claim is that defendant did not timely inform plaintiff that defendant considered the employment of Ravasini and Johnson grounds for nonapproval as a qualified bidder. As such, plaintiff's claim clearly smacks of tort over which this court has no jurisdiction. *Eastport Steamship Corp. v. United States, supra,* 372 F.2d at 1009–1011, 178 Ct.Cl. at 608–11; *Trone v. United States,* Ct.Cl., 553 F.2d 105 (Order entered February 4, 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 62, 54 L.Ed.2d 77 (1977). In *Trone,* we clearly stated:

> We have ruled that the United States cannot be held liable under the Tucker Act for commercial injuries resulting from a failure or wrong in the course of the normal regulatory process. *Eastport Steamship Corp. v. United States, supra,* 372 F.2d 1002, 1009–1011, 178 Ct.Cl. 599,

608–11 (1967). *A fortiori* the same principle must apply when the federal officials have committed no such wrong in the regulatory process but have merely tried to redress failures or improper activity by business entities through compulsion on those persons to comply with the proper standards.

This court in the case of *Somali Development Bank v. United States, supra,* held that it does not have jurisdiction over tort claims which it defined as including claims based on "negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed." *Somali Development Bank, supra,* 508 F.2d at 821, 205 Ct.Cl. at 749. As in *Somali Development Bank,* plaintiff's petition clearly sounds in tort. The tortious acts were allegedly committed by defendant during the events occurring just prior to defendant's awarding the Bid I contract to plaintiff. The mere fact that the tortious acts were intertwined with Bid I and Bid II does not convert the tort into an actionable implied-in-fact contract claim within the jurisdiction of this court. We also observe that the very nature of the following damages claimed by plaintiff, in paragraph 27 of its petition, clearly reflects that plaintiff's petition is in tort:

1) Extra wages to employees subsequent to the first contract and prior to the termination of employees;

2) Expenses for the termination of the occupation of G & G's former premises;

3) Loss on the contract for the purchase of the machinery from G & G; and

4) Organizing expenses of plaintiff corporation.

These claims represent damages flowing from conditional obligations incurred by plaintiff before Bid I was accepted. They are not attributable to the rejection of Bid II.

---

**5.** "1–905.1 *General.*

\* \* \* \* \* \*

"(b) Maximum practicable use shall be made of currently valid information on file or within the knowledge of personnel in the Department of Defense. Each Department, shall at such level and manner as it deems appropriate, maintain useful records and experience data

for the guidance of contracting officers in the placement of new procurement, and shall inform its contracting officers and the other Departments of the means of access thereto. Notwithstanding this direction contract administration offices shall maintain files of information reflecting upon the ability of contractors to perform Government contracts successfully."

Since the claim sounds in tort and falls within either 28 U.S.C. § 2680(a) (1970) or 28 U.S.C. § 2680(h) (1970), exceptions to liability under the Federal Tort Claims Act, there is no basis for transferring this case to an appropriate U.S. District Court pursuant to 28 U.S.C. § 1506 (1970).

Accordingly, based upon the foregoing, defendant's motion for judgment on the pleadings is granted and plaintiff's petition is dismissed. Plaintiff's motion for summary judgment is denied.