Ronald BLACK, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–171C.

United States Claims Court.

Nov. 13, 1991.

Ronald Black, pro se plaintiff.

William K. Olivier, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

*Introduction*

Plaintiff, Ronald Black, filed his first motion to amend his complaint in this military pay action, pursuant to Rule 15 of the United States Claims Court, on May 21, 1991, and his *second* motion to amend on June 11, 1991. In his initial complaint against the United States, filed on February 21, 1990, plaintiff requested (i) $222,652 in retirement benefits accruing from his 1979 honorable discharge from the United States Air Force as a result of defendant's alleged arbitrary and capricious misdiagnosis of his mental condition; (ii) an order changing his diagnosis to paranoid schizophrenia; (iii) an order that plaintiff be declared 100% disabled; (iv) future benefits as a result of this disability; and (v) other relief which may be just and proper. Plaintiff now seeks to amend his original complaint by adding two counts which addition-

ally request (i) $250,000 as a result of defendant's intentional and knowing misdiagnosis of paranoid personality instead of paranoid schizophrenia, thereby fraudulently depriving him of benefits under 10 U.S.C. § 1201; and (ii) that he be allowed to bring a class action pursuant to Rule 23 of the United States Claims Court on behalf of all discharged Air Force psychiatric patients suffering from serious mental illness but deprived of benefits under 10 U.S.C. § 1201 due to incorrect diagnosis.

In addition to the foregoing, plaintiff brought separate motions—(i) to certify a class action, and (ii) to seal records in the class action. These motions were also filed on May 21, 1991, at the time of the filing of the first motion to amend his complaint. This court denies plaintiff's motion to file the first amended complaint with respect to Counts II and III therein for the reasons discussed hereinafter, and for the additional reason that the allowance of the filing of the second amended complaint moots the motion regarding the first amended complaint, as well as the motions to certify a class action and to seal records in the class action.[1]

*Facts*

Plaintiff entered military service in the United State Air Force in July of 1978 and was commissioned a second lieutenant on October 24, 1978. On October 30, 1978, plaintiff was admitted to the Veterans Administration Hospital at Albuquerque, New Mexico. He was there diagnosed as suffering from "paranoid delusions" with "suspected paranoid schizophrenia." Plaintiff had no prior history of psychiatric disability or any pre-existing psychiatric illness. On November 3, 1978, plaintiff was transferred to the Air Force facility at Sheppard Air Force Base, Wichita Falls, Texas, where his diagnosis was changed to "paranoid personality." Plaintiff alleges that he has been informed by nine different medical authorities that the correct diagnosis of his illness is "paranoid schizophrenia," as

---

**1.** This court notes that it has been delayed in responding to plaintiff's *pro se* motions due to his multiple "patch quilt" filing of a plethora of motions since May 21, 1991. All proper responses have been filed and it is now appropriate to dispose of all such motions by separate orders in a contemporaneous review.

originally diagnosed by the Veterans Administration.

On March 30, 1979, plaintiff was honorably discharged from the United States Air Force. Thereafter, on or about October 25, 1979, plaintiff suffered a post-discharge mental breakdown. He claims that his mental breakdown was a result of the defendant's mismanagement of the plaintiff while in Officers Training School. Specifically, plaintiff claims that by transferring him on or about the ninth week of training to a different squadron, the defendant increased the stress load to an abnormally high level and then suddenly eliminated the stress at graduation, which caused the mental breakdown.[2]

Plaintiff further claims that he was improperly discharged from the United States Air Force, inasmuch as he was misled as to the seriousness of his illness by the medical personnel at Sheppard Air Force Base as evidenced by the alleged erroneous paranoid personality diagnosis. Based on the correct diagnosis of paranoid schizophrenia, plaintiff claims that he should have been medically *retired* under 10 U.S.C. § 1201.[3]

Plaintiff first discovered the alleged incorrect diagnosis on or about March 3, 1986, when he refiled for Veterans Administration benefits.[4] The Disabled American Veterans advised the plaintiff not to file a claim with the Air Force Board for Correction of Military Records (AFBCMR) until the Veterans Administration had made its determination. The Veterans Administration subsequently found a service-connected disability and plaintiff then filed a petition with the AFBCMR under 10 U.S.C. § 1552, claiming that defendant failed to pay lawful benefits to which he was entitled since 1979, as a result of his disability.[5] On November 21, 1989, the AFBCMR denied plaintiff's claim for relief.

Following the denial by the AFBCMR, plaintiff filed a complaint in this court on February 21, 1990, which contends—that the AFBCMR was arbitrary and capricious in denying the prayed for relief; and that the AFBCMR acted contrary to the clear evidence of nine medical authorities in violation of its mandate. On May 21, 1991, plaintiff filed his first motion to amend his original complaint by adding the two counts referred to *supra.*[6]

In addition to this second count, plaintiff also filed separate motions on May 21, 1991, to certify a class action and to seal records in the class action.

*Contentions of the Parties*

1. *Plaintiff*

The plaintiff is moving to amend his original complaint by adding two new counts.

---

2. Plaintiff also alleges in his motion to amend his complaint that he could have been the victim of a covert intelligence activity to convince plaintiff that he was insane. However, plaintiff proceeds on the theory that his mental breakdown was caused by defendant's mismanagement.

3. 10 U.S.C. § 1201 describes the method of retirement for members of the armed forces.

4. As noted previously, plaintiff claims that he has been informed by nine different medical authorities that the correct diagnosis of his illness is "paranoid schizophrenia" as originally diagnosed by the Veterans Administration in 1978.

5. 10 U.S.C. § 1552 describes the method for correction of military records.

6. In addition to the foregoing two new counts in plaintiff's motion to amend his complaint, plaintiff included two other allegations. In paragraph 5 of the amended complaint, plaintiff alleges that "[a]s a result of the failure of the United States to pay lawful benefits, plaintiff has suffered extreme deprivations since his 1979 discharge." In paragraph 6, plaintiff alleges that he "suffered a mental breakdown or was the victim of a covert intelligence activity to convince plaintiff that he was insane." However, plaintiff states in the same paragraph that he is proceeding on the presumption that he suffered a mental breakdown as stated in the original complaint.

On June 11, 1991, plaintiff filed a second motion to amend his complaint. Plaintiff claims in this second motion that because defendant failed to oppose the two additions in paragraphs 5 and 6 of his first motion to amend, defendant has waived its right to oppose the second motion. Alternatively, plaintiff states that the court can assume that defendant raises no objection. In its response filed June 13, 1991, defendant stated that it did not object to the filing of the plaintiff's amendments since the allegations and prayer for relief are essentially the same as in the original complaint.

One count (Count II) is for defendant's intentional and knowing misdiagnosis of plaintiff as a paranoid personality. The second count (Count III) is for certification of a class action. For both counts, plaintiff argues that since no undue prejudice would result prior to trial, Rule 15 of the United States Claims Court allows him to amend pleadings as a matter of course before a response is served.

As to the class action count, the plaintiff claims that the class is sufficiently well designated, the questions of law and fact are common to all members, and that the class is so large as to make joinder impractical, thus satisfying the requirements of Rule 23 of the United States Claims Court.

## 2. *Defendant*

With respect to Count II which involves the claim of intentional and knowing misdiagnosis of the plaintiff, the defendant argues that this claim sounds in tort which is expressly excluded from the Claims Court's jurisdiction. 28 U.S.C. § 1491(a)(1). Moreover, while recognizing the liberal construction of Rule 15, defendant also argues that leave to amend a complaint should not be granted where, as here, the proposed amendment will not withstand a motion to dismiss.

With respect to the new Count III concerning a class action suit, defendant contends that the Claims Court reserves class actions only for extraordinary cases and that its use is generally disfavored. Moreover, defendant argues that the plaintiff has failed to meet the stringent requirements to certify a class. First, defendant argues that plaintiff has failed to demonstrate a common legal issue he shares with other potential claimants. Secondly, defendant argues that even if there are any other potential members, individual issues of fact relating to each potential member are overriding and that their entitlement to benefits is contingent primarily upon separate factual evaluations in each case. Thus, defendant argues that plaintiff has failed to demonstrate common *factual* situations which he shares with other potential claimants. Thirdly, defendant argues that plaintiff has failed to demonstrate that he can adequately represent the proposed class. Fourth, defendant claims there is no danger of inconsistent adjudications in separate court actions because all potential claimants can bring suit in this court, and that all potential claimants who claim entitlement of more than $10,000 must bring suit in this court. Finally, defendant argues that plaintiff has failed to demonstrate that joinder, pursuant to Rule 20(a) of the United States Claims Court, is not a more appropriate method than a class action.

## Issues

There are two issues for our consideration—first, whether this court should exercise its discretion and allow plaintiff to file his first amended complaint; and second, whether the allowance of the second motion to amend the complaint moots the allowance of the first motion to amend the complaint as well as the related class action motions. Count II of the first amended complaint raises jurisdictional tort issues, while Count III thereof raises the issue— whether a class action is proper in this particular case.

## Discussion

### A. *The First Amended Complaint*

1. *Count II—First Amended Complaint:* An Action In Tort For Intentional And Knowing Misdiagnosis Of Plaintiff As A Paranoid Personality In Order To Fraudulently Deprive Him Of His Benefits Under 10 U.S.C. § 1201 Is Outside Of This Court's Jurisdiction.

In his first motion to amend the complaint, plaintiff avers that not only were the actions by the AFBCMR arbitrary and capricious, but that the AFBCMR also intentionally and knowingly misdiagnosed him as a paranoid personality in order to fraudulently deprive him of his benefits under 10 U.S.C. § 1201. Given the liberal construction of Rule 15 of the United States Claims Court, this court must determine whether plaintiff's amendments contained in Counts II and III appropriately require this court to grant said motion.

■ RUSCC 15(a), which governs the filing of amendments to pleadings, states in pertinent part:

A party *may* amend [his] pleadings once as a matter of course at any time before a response is served.... Otherwise a party *may amend* [his] pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*

RUSCC 15(a) (emphasis added). An appropriate interpretation of this operative language requires this court to rely primarily on the U.S. Supreme Court's opinion in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In *Foman*, the Supreme Court reversed, *inter alia*, a decision of the Court of Appeals which affirmed a district court's refusal to allow the plaintiff to amend its petition after judgment had initially been issued.[7] In doing so, the Supreme Court ventilated the following interpretation of Rule 15(a):

Rule 15(a) declares that leave to amend *"shall be freely given when justice so requires"; this mandate is to be heeded.... If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason*—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—*the leave sought should, as the rules require, be "freely given."* Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but *outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion* and inconsistent with the spirit of the Federal Rules.

**7.** In *Foman*, the Court was construing FRCP 15(a), which mirrors in all material respects

*Foman*, 371 U.S. at 182, 83 S.Ct. at 230 (emphasis added; citations omitted). It is clear from this pronouncement that any justification for denying a motion to amend must be "explicitly indicated." *Effingham County Bd. of Educ. v. United States*, 9 Cl.Ct. 177, 180 (1985). This suggests that it is "an abuse of discretion to deny an amendment for lesser reasons." *Id.*

■ Of the extenuating circumstances outlined in *Foman*, there is one in particular which the Supreme Court has emphasized. *Id.* For example, in *United States v. Hougham*, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960), the Supreme Court noted that "Rule 15 ... was designed to facilitate the amendment of pleadings *except* where prejudice to the opposing party would result." *Id.*, 364 U.S. at 316, 81 S.Ct. at 17. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1970) (Court similarly emphasized the need to find prejudice to opposing party). Therefore, it is clear that absent a firm showing of prejudice to the opposing party, as a matter of law, an amendment to a complaint must be allowed. *State of Alaska v. United States*, 15 Cl.Ct. 276, 280 (1988) ("a showing of undue or substantial prejudice is an imperative to warrant the denial of a motion to amend a complaint").

However, the threshold inquiry here is—whether plaintiff's tort amendment (Count II) is one which is within this court's jurisdiction. If Count II is one in tort, then this court lacks jurisdiction to hear that claim.

It is axiomatic that the Tucker Act, 28 U.S.C. § 1491(a)(1), expressly excludes tort claims from the jurisdiction of the court:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages, *in cases not sounding in tort.*

RUSCC 15(a).

28 U.S.C. § 1491(a)(1) (emphasis added); *Transcountry Packing Co. v. United States*, 215 Ct.Cl. 390, 395, 568 F.2d 1333, 1336 (1978) ("[the Claims Court] does not have jurisdiction over tort claims"); *Shanbaum v. United States*, 1 Cl.Ct. 177, 179 n. 3 (1982) ("This Court does not possess jurisdiction over claims sounding in tort."); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1010 (1967) ("Congress has always withheld from [the jurisdiction of the Claims Court] original jurisdiction over tort claims against the [United States].").

 The exception to this rule only occurs upon the tortious breach of a contractual obligation. *Chain Belt Co. v. United States*, 127 Ct.Cl. 38, 54, 115 F.Supp. 701, 711–712 (1953) (holding that the Tucker Act has consistently been interpreted to allow jurisdiction over claims which, although perhaps somewhat tortious in nature, are essentially based upon the breach of a contractual obligation). Therefore, an action may be maintained in the Claims Court which arises "primarily from a contractual undertaking, regardless of the fact that the claim resulted from the defendant's negligent performance of the contract." *H.H.O., Inc. v. United States*, 7 Cl.Ct. 703, 706 (1985) ("the test for jurisdiction [in the Claims Court], under the Tucker Act, is whether there has been in effect a 'tortious' breach of contract, rather than a tort independent of the contract.").

 It is clear beyond cavil that the case before this court is not one in contract, but rather one arising under statutes and/or executive regulations. Therefore, the exception outlined above is inapposite. Plaintiff's amended Count II claim is one primarily in tort and therefore not within the jurisdiction of this court. In that claim, he avers that the United States intentionally and knowingly misdiagnosed his condition in order to deprive him of benefits. Moreover, and as a consequence thereof, plaintiff is seeking $250,000 in damages for the mental suffering caused by the alleged intentional actions. This, we find, clearly sounds in tort. 74 Am.Jur.2d *Torts* § 18 (1974) ("A duty with which the law of torts

is concerned is the duty to abstain from intentional injury to others. Therefore, it is a general rule of common law that a cause of action arises whenever [a] person, by an act not in the exercise of a lawful right, causes loss or does damage to another with an intent ... to produce such harm, without just or lawful excuse or justifiable cause or occasion.").

Because Count II of plaintiff's first amended claim clearly sounds in tort, this court does not possess jurisdiction to hear the claim, therefore we DENY plaintiff's motion to amend on this count.

> 2. *Count III—First Amended Complaint:* On These Pleadings, Can Plaintiff Properly Bring A Class Action On Behalf Of All Discharged Air Force Psychiatric Patients Suffering From Serious Mental Illness But Deprived Of Benefits?

Before a determination is made as to whether Count III of plaintiff's first amended complaint is not prejudicial to the defendant and therefore within the liberal construction of RUSCC 15, this court must initially address the question—whether plaintiff can properly bring a class action claim under RUSCC 23. If it is determined that plaintiff cannot bring a class action, then this court must deny Count III of plaintiff's first amended complaint. In addition, if it is determined that plaintiff cannot bring a class action, plaintiff's related Motion To Certify A Class Action and Motion To Seal Records—Class Action will necessarily be moot.

 Plaintiff alleges in his RUSCC 15 motion to amend the complaint that the United States Air Force has a *policy* of diagnosing personality disorders in personnel who are clearly suffering from more severe illnesses, thereby depriving these individuals of their lawful benefits. On these grounds, plaintiff seeks to form an actionable class of "all discharged Air Force psychiatric patients suffering from serious mental illness but deprived of benefits under [10 U.S.C. § 1201] due to incorrect diagnosis." In the United States Claims Court, the certification of class ac-

tions is governed by RUSCC 23, which states as follows:

> A motion to certify a class action *shall be filed with the complaint* [8] and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

RUSCC 23 (emphasis added). Although RUSCC 23 itself provides no criteria for determining the circumstances under which a class action should be certified, case law makes clear that the class action device is reserved for extraordinary cases and that it is generally disfavored. *Saunooke v. United States*, 8 Cl.Ct. 327, 329 (1985); *O'Hanlon v. United States*, 7 Cl.Ct. 204, 206 (1985). In this connection, see the list of criteria enunciated in *Quinault Allottee Assoc. v. United States*, 197 Ct.Cl. 134, 140–141, 453 F.2d 1272, 1276 (1972). These criteria have consistently been followed by this court. *O'Hanlon*, 7 Cl.Ct. at 206.

■ The court in *Quinault* set forth eight conjunctive criteria for proper certification, all of which must be met. The eight criteria are as follows:

> (i) [T]he [members must] constitute a large but manageable class, (ii) there is a question of law ... common to the whole class, (iii) this common legal issue is the predominant one *overriding separate factual issues affecting the individual members*, (iv) the claims of the present plaintiffs are typical of the claims of the class, (v) the Government has acted on grounds generally applicable to the whole class, (vi) the claims of many [members] are so small that it is doubtful that they would be pursued other than through [a class action], (vii) the current plaintiffs will fairly and adequately protect the interests of the class without conflict of interest [footnote omitted], and (viii) the prosecution of individual actions by members of the class, some in district courts and some in this court,

would create a risk of inconsistent or varying adjudication.

*Id.*, 197 Ct.Cl. at 140–141, 453 F.2d at 1276 (emphasis added).

■ After reviewing all the evidence that has been presented against the above criteria, this court determines that a class action is inappropriate in this case for five principal reasons. Therefore, we are also constrained to DENY Count III to plaintiff's first amended complaint.

**a. Plaintiff Has Failed To Satisfy Criteria (ii)—That There Is A Common Legal Issue For A Class Action.**

Plaintiff argues in his complaint that he individually should be declared 100% disabled and therefore entitled to retirement benefits not paid to him since 1979 as a result of defendant's arbitrary and capricious misdiagnosis of his mental condition. The fact that other potential claimants may be entitled to retroactive retirement benefits as a result of arbitrary and capricious actions by the AFBCMR does not, *ipso facto*, create a common legal issue necessary for a class action. These potential claimants may be entitled to retirement benefits for a number of critical factual reasons, each involving a different question of law.

**b. Plaintiff Has Failed To Satisfy Criteria (iii)—That A Common Legal Issue Is Predominant And Overrides Any Separate Factual Issue.**

Even if the common legal issue is the arbitrary and capricious actions of the AFBCMR, individual factual issues may on the facts here predominant and override the common legal issue. Courts have rejected certification of class actions where individual factual issues clearly predominate. *Lidie v. United States*, 478 F.2d 552, 555 (9th Cir.1973) ("[g]iven the many disputed factual issues peculiar to individual plaintiffs, a class action is not warranted under [Rule 23].").

---

**8.** Subject RUSCC 23 motion was not filed with the complaint as required. This criterion is obligatory and was not met.

In this case, distinct individual determinations must be made regarding the degree of disability, type of disability, diagnosis by physicians and amount of compensation, if any, to be paid to each potential claimant. Potential claimants would surely have been diagnosed at different time periods by different physicians for different reasons. Thus, it is patently clear that the plaintiff's averments here lack the requisite and singular question of fact for class certification.

c. Plaintiff Has Failed To Satisfy Criteria (vii)—That He Will Fairly And Adequately Represent The Interests Of The Proposed Class.

Plaintiff most clearly fails on this criterion inasmuch as it is alleged that he will be able to fairly and adequately represent this proposed class. However, plaintiff at bar is not represented by counsel and, moreover, he admits that he has few resources. Representation by adequate counsel is a singular important criterion for granting class action certification. *Quinault,* 197 Ct.Cl. at 141, 453 F.2d at 1276 n. 3 ("it is appropriate in a class suit to consider plaintiff's attorney ... [i]t goes without saying that present counsel are 'qualified, experienced, and generally able to conduct the proposed litigation.'"). Because plaintiff lacks any counsel whatsoever, and because he himself possesses neither the resources nor the experience to conduct such a potentially large vexing lawsuit, he clearly cannot adequately represent such a potential class.

d. Plaintiff Has Failed To Satisfy Criteria (viii)—That There Is Risk Of Inconsistent Adjudications If This Is Not Brought As A Class Action.

There is little risk, if any, of inconsistent adjudications in different courts, even if each of the potential plaintiffs would elect to file suit separately, because each such suit over $10,000 must be brought in the Claims Court. *O'Hanlon,* 7 Cl.Ct. at 207. Even if the suit was for less than $10,000 and therefore brought under the Tucker Act in federal district court, the Tucker Act requires that appeals from all such actions would be heard by the U.S. Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(2). Therefore, there would be no danger of a split among the circuits. *Id.*

e. Certification Of A Class In This Case Would Not Serve The Interests Of Justice.

Finally, plaintiff argues that the proposed class is so numerous that joinder would be impracticable. However, plaintiff has not yet ascertained any specific number of potential class members, only blandly stating that it is greater than one hundred. Historically, this court has managed cases involving a number of claimants without resorting to a class action. *O'Hanlon,* 7 Cl.Ct. at 206–207 ("[t]his court has never expressed any concern nor had any difficulty dealing with cases involving hundreds of party plaintiffs."). Any of plaintiff's comrades who were improperly diagnosed may wish to join this case under RUSCC 20(a), if they so choose. Although plaintiff has yet to persuade any of the potential claimants to join in a class action suit, he is now trying to use this court's authority to force the group into joining in this action.

This [c]ourt has traditionally *rejected* the proposition "that it is necessary or appropriate to bind" potential plaintiffs "who fail to join the suit, or that we should adopt the device ['opt out'] of Rule 23(c)(2), (3) for notice to class members that, unless they request exclusion from the suit by a specified date, the judgment, whether favorable or not, will cover them" ... [t]he "opt out" procedure would seem particularly inappropriate when a solo plaintiff, with unique factual circumstances, attempts to bring the class action procedure into play.

*Id.* at 207–208 (emphasis added). Since plaintiff failed to satisfy five of the eight obligatory elements, we find that his motion to certify a class action must be denied.

In view of the discussion hereinabove, we deny plaintiff's motion to file a first amended complaint—as to Count II we are without jurisdiction in tort action, and as to

Count III plaintiff fails to satisfy the required criteria. As a result of the foregoing, plaintiff's additional related class action motions to certify a class action and to seal records are moot.

### B. *The Second Amended Complaint*

In plaintiff's second amended complaint, defendant observes, in response that:

> Plaintiff ... now seeks to amend the complaint by making minor and insignificant changes to the original complaint.... Further, the proposed second amendment to the [original] complaint effectively moots the motions to file a *first* amendment to the complaint, to certify a class action, and to seal the records of the class.
>
> In his proposed second amendment to the complaint, ... he ... adds allegations in paragraphs 5 and 6 that were not included in the original complaint. The remaining allegations of the proposed second amendment to the complaint are essentially the same, if not identical, to the allegations in the original complaint. Further the prayer for relief in the proposed second amendment to the complaint is essentially the same as the prayer for relief in the original complaint.

Against this background, defendant correctly contends—that "the proposed second amendment to the [original] complaint will eliminate [C]ount [II and III in the first amended complaint]," and that all of such motions and the related class action motions are, of course, moot. Because defendant does not object to plaintiff's second motion to amend the complaint, said motion of plaintiff is hereby GRANTED.

### Conclusion

Plaintiff's first motion to amend the complaint and related class action motions are hereby DENIED, and his second motion to amend his complaint is hereby GRANTED.

IT IS SO ORDERED.