**John FILOSA and Susan Kemble, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 04–710C.

United States Court of Federal Claims.

March 31, 2006.

Fran L. Rudich, Locks Law Firm, PLLC, New York, City, counsel for Plaintiffs.

Gregory T. Jeager, United States Department of Justice, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

BRADEN, Judge.

■ On May 1, 2002, the United States Court of Federal Claims substantially revised the rule for class action certification to conform to Federal Rule of Civil Procedure ("FRCP") 23. *See* RCFC 23, Rules Comm. Note ("RCFC 23 has been completely rewritten. Although the court's rule is modeled largely on the comparable FRCP [23], there are significant differences.").[1] To date, the

---

1. RCFC 23 adopts the substantive criteria for certifying and maintaining a class action set forth in *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972), however, as *Barnes v. United States*, 68 Fed.Cl. 492 (2005) advised:

(i) the class must be large, but manageable; (ii) there must be a question of law common to the whole class; (iii) the common question of law must predominate over any separate factual issues affecting individual class members; (iv) the claims of named plaintiffs must be

United States Court of Federal Claims has issued six opinions analyzing revised RCFC 23.[2] Although only one class was certified since the revision of RCFC 23, it bears repeating that class actions are not disfavored by the United States Court of Federal Claims. *See Barnes*, 68 Fed.Cl. at 493–501 ("If the proposition that class actions 'are disfavored' ever was valid, it certainly is no longer so now."). Decisions not to certify reflect only the faithful application of RCFC 23 by the trial court to the particular facts of the case at issue, nothing more.

For the reasons discussed herein, in this case, the court has determined that Plaintiffs have met the requirements of RCFC 23. In making this determination, the court reminds the parties that no decision has been made as to the substantive merits.

### RELEVANT FACTUAL BACKGROUND [3]

Plaintiffs are nurse case managers employed by the United States Department of Veterans Affairs ("VA"), Veterans Health Administration ("VHA"). Compl. ¶¶ 1–3. Since mid–1998, the VHA has required Plaintiffs and other nurses employed by the VHA to provide "24/7 care" services to veterans in the Mental Health Intensive Case Management Service ("MHICM Program"), located in Hudson Valley, New York. *See* Compl. ¶¶ 2–3; *see also* Sept. 21, 2005 Tracy Dep. at 12. The MHICM Program provides continuing care to veterans with severe mental illness, who have been discharged from the hospital and placed in private facilities. *See* Sept. 21, 2005 Gitelson Dep. at 15 ("MHICM is a program at the hospital that serves [the] seriously mentally ill in the community. So patients with seriously [sic] mental illness are considered to be dischargeable and can be placed in a facility that's privately owned, but the treatment and care of that patient is assigned to the MHICM staff.").

The VHA provides 24–hour clinical coverage to sponsors[4] and veterans in the MHICM Program. Sponsors of facilities in which veterans are placed receive a two-page document, entitled Mental Health Initiative Operations and Sponsor Manual ("Sponsor Manual"). *See* Sept. 21, 2005 Gitelson Dep. at 46–7. The Sponsor Manual states that:

---

typical of the class; (v) the United States must have acted on grounds generally applicable to the whole class; (vi) the claims of many allottees must be so small that it is doubtful they would otherwise be pursued; (vii) the current plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; (viii) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications. Consistent with the Committee Notes, various opinions view these factors as informing the prerequisites for class certification under RCFC 23. But, care must be taken lest the parallel to *Quinault* be carried too far, as the Committee Notes also indicate that the provisions of RCFC 23 are "modeled largely on the comparable [federal rule]." A careful comparison reveals that in some instances, RCFC 23 implicates factors not found in *Quinault, e.g.,* whether "joinder of all members is impracticable," while in others, *Quinault* imposes conditions not found in RCFC 23, *e.g.,* that there must be a common legal question[ ] that joins the class.
*Barnes,* 68 Fed.Cl. at 494–95 (internal citations omitted).

**2.** *See Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States,* 69 Fed.Cl. 639 (2006) (denying certification); *Fisher v. United States,* 69 Fed.Cl. 193 (2006) (denying certification); *Jaynes v. United States,* 68 Fed.Cl. 747 (2005) (denying certification) (reconsideration denied at *Jaynes v. United States,* 69 Fed.Cl. 450 (2006)); *Barnes v. United States,* 68 Fed.Cl. 492 (2005) (granting certification); *Abrams v. United States,* 57 Fed.Cl. 439 (2003) (denying class certification); and *Testwuide v. United States,* 56 Fed. Cl. 755 (2003) (denying class certification).

**3.** The factual background is derived from: Plaintiffs' April 22, 2004 Complaint ("Compl."); Plaintiffs' October 17, 2005 Motion for Class Certification ("Pls.' Mot. to Certify"); Defendant ("the Government")'s October 28, 2005 Opposition to Plaintiffs' Motion for Class Certification ("Gov't Opp."); Plaintiffs' November 10, 2005 Reply Memorandum of Law in Further Support of Motion for Class Certification ("Pls.' Reply"); Plaintiffs' October 17, 2005 Affidavits ("Pls.' Aff."); and the October 17, 2005 Affirmation of Fran Rudich, together with Exhibits A–F thereto ("Ex. A," "Ex. B," "Ex. C," "Ex. D," "Ex. E," and "Ex. F."). Exhibit E contains the September 21, 2005 depositions of Dr. David Gitelson, Professional Leader of Social Work, Hudson Valley Health Care System ("Sept. 21, 2005 Gitelson Dep.") and Dr. Regina Tracy, former Team Leader, MHICM Program, Hudson Valley Health Care System ("Sept. 21, 2005 Tracy Dep.").

**4.** Sponsor is "the term used for the owner of the facility, or in some cases it is the person that he or she hires to run the home." *See* Sept. 21, 2005 Gitelson Dep. at 47.

"Customer service is improved by increasing accessibility to care [by] providing 24 hour clinical coverage, bringing services into the home and decreasing patient waiting times by preparing hospital based staff for incoming emergencies." *Id.* at 48. Under the MHICM Program, "24–hour clinical coverage" means that, if a veteran has an emergency, the sponsor may contact either the case manager directly or an administrative person at the hospital, who will then contact a case manager. *Id.* ("[A]s with many of our programs, if there is an emergency in the community it will be handled by the hospital, whether it is by the sponsor contacting and being able to get a hold of the worker or whether it's calling the administrative person in the hospital and he or she finding someone to relate to it. But that we don't say to the sponsor, sorry, call us back in the morning."); *see also* Sept. 21, 2005 Tracy Dep. at 46–47 ("There were definitely times that the sponsors did not call the staff, and for that very reason, it was emphasized with the sponsors that they did need to call staff to inform them of an emergency.").

Veterans in the MHICM Program also are provided with a VA brochure that advises: "In the event that you need to reach [a Mental Health Intensive ("MHI")] team member during non-business hours, you may call the Health Administrative Assistant on duty at the VA hospital." *See* Sept. 21, 2005 Tracy Dep. at 49. Upon receiving such a call, the Health Administrative Assistant ("MAA") is responsible for contacting an MHI staff member. *Id.* at 49–50 ("That's what we call the MAA. Q. What's the MAA? A. It's the person assigned to the triage area, what they call the emergency room area. And if the Veteran needed to reach a staff member, you know, when it's not 8:00 to 4:30 hours, they could call the MAA and the MAA would call the staff member.").

VHA nurses who provide services to the MHICM Program are responsible for monitoring and managing patient care at private facilities where veterans have been placed. *See* Gov't Opp. at 2. The duties of these nurses "primarily involve visiting the non-VA care facilities once or more per week to ensure ... proper care." Gov't Opp. at 2.

The VHA compensates MHICM Program nurses on an hourly basis for making these visits, which are performed "during normal weekday tours of duty." *Id.; see also* Compl. ¶¶ 17–18.

In addition, in order to provide 24–hour clinical coverage, MHICM Program nurses are required to field calls that are received on weekends, holidays, evenings, or nights ("WHEN hours"). *See* Sept. 21, 2005 Gitelson Dep. at 21 ("My understanding always was that the sponsor, the owner of the homes, we used private homes, had the home numbers, not the patient's, but the owner/sponsor or the manager of the home, had the social worker's home number and the program coordinator's home phone number so that if an emergency occurred after 4:30 or before 8 o'clock in the morning, or on weekends, they would call. And that's what I referred to, or I was intending to refer to when I said they were on 24 hour call, that the sponsor or the owner of the home could contact them."); *see also* Sept. 21, 2005 Tracy Dep. at 15. At Hudson Valley, the MHICM Program does not authorize overtime pay for nurses who field calls during WHEN hours. *Compare* Ex. C at 4 ("Hudson Valley MHICM employees are not compensated for this service[.]"), *with* Sept. 21, 2005 Tracy Dep. at 15 ("I would give them comp[ensatory] time for the time that they had to make some calls."). At Hudson Valley, the MHICM Program also does not permit nurses to opt out of providing services during WHEN hours nor does it compensate these nurses with on-call pay. *See* Ex. B (indicating that nurses at Hudson Valley may not opt out of answering WHEN hours and are not compensated for this service); Ex. C ("At the Hudson Valley facility, the Community Residential Care program ('CRC') and the MHICM have employees who are requested or required to field after-hours calls from veteran patients or personnel at non-VA community residential care facilities.... Hudson Valley MHICM employees are not compensated for this service and may not opt out of it.").

At present, thirty-three VA Medical Centers in the United States require employees to field after-hours calls, however, only eigh-

teen require nurses to field after-hours calls. *See* Ex. C (detailing job titles of employees required to field after hours calls). At the other fifteen VA Medical Centers, such calls are fielded by social workers, dieticians, vocational rehabilitation specialists, or physicians. *Id.*[5] The policy and procedures regarding compensation for after-hours nurse coverage varies among the VA Medical Centers. *See* Exs. B, C, D (describing the procedures for providing and policy for compensating nurses for after-hours coverage at various VA medical centers). For example, only the nurses at the VA Medical Centers in Bedford, Massachusetts; Canandaigua, New York; Salisbury, North Carolina; Tomah, Wisconsin; and Little Rock, Arkansas, and nurses in the Northern Indiana VA Health Care System may opt out of fielding WHEN hours calls, *without any adverse consequences*. *See* Ex. B (VA chart contrasting the policies and procedures concerning WHEN hour calls); Ex. C (Narrative Supplement to Ex. B). In addition, only the nurses at Bedford, Massachusetts; Canandaigua, New York; Coatesville, Pennsylvania; Cleveland, Ohio; and Tomah, Wisconsin, either receive or may request compensatory time, if they field after-hours calls. *Id.*

VA Medical Centers in Canandaigua, New York; Coatesville, Pennsylvania; Madison, Wisconsin; and Little Rock, Arkansas have instituted either a rotation or schedule governing WHEN call coverages. *See* Ex. C (detailing procedures at VA Medical Centers). At Hudson Valley, no such rotation or schedule has been issued. *Id.* Irrespective of any rotation or schedule, nurses at each of these VA Medical Centers have not received on-call pay. *Id.* Plaintiffs have confirmed, however, that nurses at four other VA Medical Centers receive on-call pay. *Id.* At the VA Medical Center in Ann Arbor, Michigan, nurses in the MHICM and the Geriatrics/Extended Care Service field after-hours calls on a rotating basis. *See* Ex. C at 17–18. There, Geriatrics/Extended Care Service nurses receive on-call pay and may opt out of providing after-hours service. *Id.* MHICM Program nurses in Ann Arbor, however, cannot opt out and receive compensatory time, not on-call pay. At the VA Medical Center in Battle Creek, Michigan, nurses in the MHICM Program and the Extended Care/Social Work Service ("ECSWS") also field after-hours calls. *Id.* at 18–19. Nurses in these programs receive compensatory time for fielding WHEN calls, but only ECSWS nurses receive on-call pay for the time assigned for providing night and weekend coverage. *Id.* Nurses at the VA Medical Center in Lebanon, Pennsylvania, "rotate after hours call duty among themselves, carry a beeper during their rotation ... [but] *receive on-call pay while carrying the beeper*; if they are required to respond in person, they earn overtime pay." Ex. C at 10 (emphasis added). Likewise, at the VA Medical Center in Atlanta, Georgia, a nurse fields calls on "a one month interval basis to provide after-hours coverage" and receives on-call pay for those months. *Id.* at 13.

## PROCEDURAL HISTORY

On April 22, 2004, Plaintiffs filed a Complaint in the United States Court of Federal Claims, alleging a violation of 38 U.S.C. § 7453(h)[6] by the VHA for failing to pay

---

**5.** *Congress mandated that nurses receive on-call pay, but only authorized on-call pay for social workers, dieticians, and vocational specialists at the discretion of the Secretary of Veteran's Affairs. Compare* 38 U.S.C. § 7453 (governing several types of premium pay for nurses, including mandatory on-call pay) *with* 38 U.S.C. § 7457 (authorizing on-call pay for social workers, dieticians, and vocational rehabilitation specialists as discretionary).

**6.** Title 38, Section 7453, Subsection (h) provides: A nurse who is officially scheduled to be on call outside such nurse's regular hours or on a holiday designated by Federal statute or Executive order shall be paid for each hour of such on-call duty, except for such time as such

nurse may be called back to work, at a rate equal to *10 percent of the hourly rate for excess service* as provided in subsection (e).
38 U.S.C. § 7453(h) (emphasis added).
  The Complaint incorrectly alleges that § 7453(h) mandates premium pay at a rate of 10% for *regular hourly pay rate* for each hour of on-call duty service, rather than 10% of "the *hourly rate for excess service* as provided in subsection (e)." *Id.* (emphasis added); *compare with* Compl. ¶ 14 ("at a rate equal to ten (10%) percent of their *regular hourly pay rate*" (emphasis added)); *see also* Compl. at Prayer ¶ 3 ("at rates not less than ten (10%) of their *regular pay rate*" (emphasis added)).
  Title 38, Section 7453, Subsection (e) establishes overtime pay for nurses at "one and one-

"additional pay" for on-call duty services extending beyond regular working hours. On July 21, 2004, the United States filed an Answer.

Pursuant to the court's January 18, 2005 Scheduling Order and a series of Amended Scheduling Orders, from January 18, 2005 through September 30, 2005, the parties were afforded the opportunity to discover facts relevant to the RCFC 23 inquiry.

On October 17, 2005, Plaintiffs filed a Motion for Class Certification, pursuant to RCFC 23, to represent:

> [A]ll nurses, as that term is used and defined in Title 38, Chapter 74 of the United States Code, who were employed by the Veterans Health Administration (VHA), between April 24, 1998 and the entry of judgment in this case[ ], who have not received on-call pay for any hours that they were officially scheduled to be on call, and scheduled to perform on-call duty, outside of their regular work hours.

Pls.' Mot. to Certify at 1. On October 28, 2005, Defendant filed an Opposition. On November 10, 2005, Plaintiffs filed a Reply.

## DISCUSSION

### A. Jurisdiction.

It is well settled that the United States cannot be sued without consent. *See United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Consent must occur through an unequivocal, express waiver of sovereign immunity. *Id.* The Tucker Act, 28 U.S.C. § 1491(a), provides the requisite express waiver and authorizes the United States Court of Federal Claims with subject matter jurisdiction to adjudicate a claim alleging a violation of: the United States Constitution; any Act of Congress; any regulation of an executive department; any express or implied contract with the United States; or a claim for liquidated or unliquidated damages in cases not sounding in tort. *See* 28 U.S.C. § 1491(a).

The Tucker Act, however, does not create any substantive right for monetary damages. Therefore, to invoke the jurisdiction of the United States Court of Federal Claims, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004) ("Jurisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.").

In this case, the court has determined that the United States Court of Federal Claims has jurisdiction, because Plaintiffs properly have identified and pled an independent right to money damages under 38 U.S.C. § 7453(h). *See* Compl. ¶¶ 14–16; *see also* 38 U.S.C. § 7453(a) ("In addition to the rate of basic pay provided for nurses, a nurse *shall receive* additional pay as provided by this section." (emphasis added)).

### B. Standard For Granting Class Certification Under RCFC 23.

Class actions initiated in the United States Court of Federal Claims may be granted: "only if (1) the class is so *numerous* that joinder of all members is impracticable, (2) there are questions of law or fact *common* to the class, (3) the claims of the representative parties are *typical* of the claims of the class, and (4) the representative parties will fairly and *adequately protect* the interests of the class." RCFC 23(a) (emphasis added). In addition, a class action may only proceed when:

> (1) the United States has *acted or refused to act on grounds* generally applicable to the class; and

> (2) the court finds that the *questions of law or fact common to the members of the class predominate* over any questions affecting only individual members, and that a

---

half times such nurse's hourly rate of basic pay." 38 U.S.C. § 7453(e). Accordingly, 38 U.S.C. § 7453(h) requires that nurses are paid an on-call hourly pay rate of 15%, not 10%. *Id.*

Although 38 U.S.C. § 7453(e)(3) prohibits compensatory time, in lieu of overtime pay at

"one and one-half times such nurse's hourly rate of basic pay," except as "voluntarily requested in writing by the nurse in question," the Complaint alleges only a violation of 38 U.S.C. 7453(h).

*class action is superior to other available methods for the fair and efficient adjudication of the controversy.*

RCFC 23(b) (emphasis added).

The requirements of RCFC 23(a) and (b) "can be grouped into five categories: (i) **numerosity**-a class so large that joinder is impracticable; (ii) **commonality**-in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality**-that the named parties' claims are typical of the class; (iv) **adequacy**-relating to fair representation; and (v) **superiority**-that a class action is the fairest and most efficient way to resolve a given set of controversies." *Barnes,* 68 Fed.Cl. at 494 (emphasis in original) (citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (same regarding FED. R. CIV. P. 23(a), (b)); *Testwuide,* 56 Fed.Cl. at 761). Since these requirements are in the conjunctive, failure to satisfy any one "is fatal to class certification." *Id.*

The party moving for class certification bears the burden of satisfying the requirements set forth in RCFC 23 by a preponderance of the evidence. *See Barnes,* 68 Fed.Cl. at 495 ("Plaintiffs bear the burden of establishing that the action satisfies these requirements.") (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see also Belle v. Jefferson–Pilot Life Ins. Co.,* 2006 WL 335892 (4th Cir.2006) (discussing FRCP 23) ("It is not the defendant who bears the burden of showing that the proposed class does not comply with the class action rule, but rather it is the plaintiff who bears the burden of showing that the class does comply with the rule.").

In determining whether the requirements of RCFC 23(a) and (b) are met, however, the court should not consider "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class action rule are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see also Falcon,* 457 U.S. at 161, 102 S.Ct. 2364 ("With the same

concerns in mind, we reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). At this juncture, the trial court only must assume the truth of the factual assertions in the Complaint. *See Barnes,* 68 Fed. Cl. at 495.

## C. The Court's Resolution Of Plaintiffs' Motion For Class Certification.

### 1. The "Numerosity Requirement."

█ The "numerosity requirement" is satisfied if the proposed "class is so numerous that joinder of all members is impracticable[.]" RCFC 23(a)(1). Several factors determine numerosity including, but not limited to: "the size of the class, ... the facility of making service upon them if joined, and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (discussing FED. R. CIV. P. 23).

In this case, Plaintiffs have established that the proposed class includes approximately 45 nurses, a manageable size for the purposes of serving notice. *See* RCFC 23(c)(2)(B) ("[T]he court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."); *see also* Ex. B (chart prepared by the Government identifying nurses that fielded after-hours calls (col.4) and the compensation, if any, provided for that service (col.8)); Ex. C (Narrative Supplement to Ex. B prepared by the Government listing the nurses required to field after-hours calls by facility). In addition, Plaintiffs have established that the members of the proposed class are dispersed in twelve states throughout the United States. *See* Ex. C.

Moreover, joinder in this case is not only impracticable, but impossible. *See* RCFC 20(a) (requiring "(i) a right to relief must be asserted by, or against, each plaintiff or defendant, relating to or arising out of the *same transaction or occurrence,* and (ii) some question of law or fact common to all the parties will arise in the action." (empha-

sis added)). " 'Same' in this regard does not mean 'similar.' " *Barnes*, 68 Fed.Cl. at 495 (citing *Franconia Associates v. United States*, 61 Fed.Cl. 335, 337 (2004)) ("[W]ell-known canons of construction suggest that the term 'same' must be construed consistently [in this court's rules], with the result that the term in the latter rule cannot mean 'similar.' "). Although Plaintiffs' claims are similar to those of the proposed class, they do not arise out of the "same transaction or occurrence." *Id.* (holding that the claims of individual government employees for premium pay were similar but not the "same" for the purposes of RCFC 20(a)). Accordingly, although RCFC 23(a)(1) only requires that joinder "be impracticable, not impossible," the latter is the case here. *Id.* (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.")).[7]

The Government argues that Plaintiffs have not satisfied the "numerosity requirement," because "[a]lthough it is impossible to discern how numerous plaintiffs' putative class members might be, it is clear that the class is not manageable." Gov't Opp. at 11 ("Given the terms in which plaintiffs have defined the class, there is simply no way to accurately determine the membership of the class. As a result, the vagueness of the proposed class renders it unmanageable."). RCFC 23(a)(1) requires only that "the class is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). Accordingly, under RCFC 23, manageability of a proposed class is more properly a consideration under the requirement that, "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." RCFC 23(b). Nevertheless, in support of the assertion that Plaintiffs' proposed class is not manageable, the Government suggests, without any substantiation, that the proposed class "could include none or all of VHA's 35,000 registered nurses who may have performed official overtime duties

without compensation during the period in question." Gov't Opp. at 11.

The Government's unsubstantiated conjecture does not trump the evidence proffered by the Plaintiffs, *i.e.*, two detailed exhibits, prepared by the Government, that indicate that approximately forty-five VHA nurses fielded after-hours calls during the relevant period, without being compensated under 38 U.S.C. § 7453. *See* Ex. B (chart indicating by VA medical center the number of nurses fielding after hours calls without being paid on-call pay); *see also* Ex. C (Narrative Supplement to Ex. B). The Government countered with the Declaration of Nevin Waever that simply estimates that the VHA employs approximately 35,000 registered nurses, but does not indicate how many were requested or required to field after-hours calls, without being paid on-call pay. *See* Gov't Opp. at Ex. 1.

The Government's argument that the potential inability to ascertain class members prevents a finding of "numerosity," equally is unpersuasive. *See* Gov't Opp. at 11 ("Given the terms in which plaintiffs have defined the class, there is simply no way to accurately determine the membership of the class. As a result, the vagueness of the proposed class renders it unmanageable."). As an initial matter, consideration must be given to the fact that such concerns have been generally raised only in the context of opt-out class actions, whereas class actions asserted under RCFC 23 are limited only to members that opt-in. *See Barnes*, 68 Fed.Cl. at 495 n. 4 ("Several cases hold that another aspect of the numerosity requirement is that there be a legally definable class that can be ascertained through reasonable effort. Such concerns, however, generally have been raised only in the context of so-called 'opt-out' class actions, in which the stakes of not contacting a class member are high." (internal citations omitted)). Moreover, the case cited by the Government in support of this assertion, *Armitage v. United States*, involves a complexity in class definition not present here. *See*

---

7. The "ease" of identifying members and ascertaining their addresses is a factor in determining the practicability of joinder. *See Kilgo*, 789 F.2d at 878. Under RCFC 23, however, this factor is of less import, because class actions in the United States Court of Federal Claims are limited to the opt-in variety. *See* RCFC 23(c)(2)(B) ("[T]he court will include in the class any member who requests inclusion[.]").

Gov't Opp. at 11 (citing *Armitage v. United States*, 18 Cl.Ct. 310, 313–14 (1989)) (denying certification of an opt-in class action due to the potential for "improper self-nomination or self-exclusion" stemming from a class definition including "four affirmative identifiers and five negative disqualifiers").

Finally, the Government's "numerosity" argument largely focuses on the merits, rather than the RCFC 23 requirements for class certification. *See* Gov't Opp. at 11 ("To the contrary, defendant's discovery responses demonstrate that the nurses at the VHA's various facilities were not officially scheduled or required to perform 'on-call' services[.]"); *see also* Gov't Opp. at 8–10 (relying on the legal conclusions of VHA employees and analogies to cases addressing on-call pay under Title 5 to conclude, "[P]laintiffs did not perform official on-call duty . . . . As a result, they cannot represent any class of nurses[.]"). As previously discussed, the resolution of the merits is irrelevant to determining whether the class certification requirements set forth in RCFC 23(a) and (b) are satisfied. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140 ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class action rule are met.").

Accordingly, the court has determined that RCFC's "numerosity" requirement has been satisfied.

### 2. The "Commonality Requirement."

■ The "commonality requirement" entails three inquiries: (1) whether there are "questions of law or fact common to the class;" (2) whether those common questions "predominate over any questions affecting only individual members;" and (3) whether the "United States acted or refused to act on grounds generally applicable to the class." RCFC 23(a)(2), (b)(1), (b)(2). To ascertain whether the "commonality requirement" is met, the court must "seek to develop an understanding of the relevant claims, defenses, facts and substantive law." *Barnes*, 68 Fed.Cl. at 496 (citing *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' ").

### a. Question Of Law Or Fact Common To The Class Exists.

RCFC 23(a)(2) requires that there be "questions of law or fact *common* to the class." RCFC 23(a)(2). This requirement is satisfied when there is at least "one core common legal question that is likely to have one common defense," the resolution of which will affect all or a significant number of the putative class members. *See Fisher*, 69 Fed.Cl. at 199–200 (citing *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test [of FED. R. CIV. P. 23(a)(2) ] is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." (internal quotation and citation omitted))). The threshold of commonality under RCFC 23(a)(2), however, is "not high." *Id.* (quoting *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir.1986) (same re: FED. R. CIV. P. 23(a)(2))).

In this case, Plaintiffs seek to represent a class of nurses "who have not received on-call pay for any hours that they were officially scheduled to be on call, and scheduled to perform on-call duty, outside of their regular work hours." Pls.' Mot. to Certify at 1. Plaintiffs state that the common question of law is "whether the [Government] has violated 38 U.S.C. § 7453(h) by failing to pay Plaintiffs and all other similarly situated, on call compensation of 10% of their usual overtime rate of pay." Pls.' Mot. to Certify at 10.[8] The court, however, has determined

---

8. The Government counters that "the occasional work plaintiffs may have performed during WHEN hours does not meet the definition of [a] compensable official on call duty." Gov't Opp. at 12. The occasional nature of the work of the proposed class, however, is relevant to determining the period of time nurses are exempted from on-call pay under 38 U.S.C. 7453(h), not whether they are entitled to on-call pay in the first instance. *See* 38 U.S.C. § 7453(h) (specifically ex-

that the common question of law is whether Plaintiffs were "officially scheduled to be on-call," within the meaning of 38 U.S.C. § 7453(h).

For these reasons, the court has determined that questions of law and fact common to the class exist. *See Barnes,* 68 Fed.Cl. at 496 (citing *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001)) ("[C]ommonality is satisfied [under FED. R. CIV. P. 23(a)(2)] where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality.").

**b. The Common Questions Of Law Or Fact Predominate Over Questions Affecting Individual Members.**

■ An additional requirement is that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." RCFC 23(b)(2). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "is far more demanding," than RCFC 23(a)(2). *See Amchem Prods., Inc.,* 521 U.S. at 623–24, 117 S.Ct. 2231 ("Even if [FED. R. CIV. P. 23](a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding.").

Although the policies and procedures at the various VA Medical Centers may differ, so that there may be differences in final individual damage determinations, the common question of law satisfies the "predominance" requirement of RCFC 23(b)(2), because the cause of action challenges a system-wide failure to pay on-call pay under 38 U.S.C. 7453(h). *See Taylor v. United States,* 41 Fed.Cl. 440, 446 (1998) ("In this case, there are separate factual issues, such as the length of employment for each claimant, the date retirement was requested by each employee, and the amount of severance pay received by each employee. These minor factual differences do not pre-

cluding "such time as such nurse may be called

dominate over the legal question such that certification of the class action is inappropriate. Many of the factual differences are related to whether a claimant is properly a member of the class and will not adversely affect determination of the common legal question.").

The Government counters that the common legal question does not meet the predominance element of the "commonality" requirement of RCFC(b)(2), because "the individual class members would still be required to prove that they were individually qualified to receive Title 38 on-call pay, (*i.e.,* that they were officially scheduled to perform services), during a particular period or periods and that such pay was not provided. Moreover ... separate factual questions relating to each class member's damages would still remain." Gov't Opp. at 12–3. The Government cites four cases to support this contention: *Abrams,* 57 Fed. Cl. at 440–441 (2003), *Black v. United States,* 24 Cl.Ct. 471, 477 (1991), *Cutright v. United States,* 15 Cl.Ct. 576 (1988), and *Busby School of the Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 603 (1985). Aside from the fact that none are precedential authority, each is distinguishable.

In *Abrams,* the only case decided after RCFC 23 was revised, the Government "conceded the common legal issue, so calculation of damages [was] the only issue that remain[ed]." *Abrams,* 57 Fed.Cl. at 440. In this case, the Government has not made the same concession. *See* Gov't Opp. at 12 ("The Government's defense ... is that the occasional work plaintiffs may have performed during WHEN hours does not meet the definition of compensable official on-call duty.").

In *Black,* the court determined that there was no common question of law. *See Black,* 24 Cl.Ct. at 477 ("The fact that other potential claimants may be entitled to retroactive retirement benefits as a result of arbitrary and capricious actions by the AFBCMR does not, *ipso facto,* create a common legal issue necessary for a class action. These potential claimants may be entitled to retirement ben-

back to work" from compensable on-call duty).

efits for a number of critical factual reasons, each involving a different question of law."). In this case, however, Plaintiffs and the proposed class share a common legal question, *i.e.*, whether they are entitled under 38 U.S.C. § 7453(h) to on-call pay for fielding after-hours calls.

In *Cutright*, plaintiff sought to certify a class of different types of government employees. *See Cutright*, 15 Cl.Ct. at 577 ("The proposed class members include: court reporters; bankruptcy judges; United States magistrates; law clerks; judicial secretaries; magistrates' secretaries; and, magistrates' clerical assistants."). In that case, the trial court held that common legal question did not predominate, because the type of employee would trigger different exceptions and authorities. *Id.* at 578 ("Entitlement to these benefits is contingent upon facts which vary for each of the different types of government employees. The proposed class members have been excluded from coverage pursuant to exceptions of the Leave Act and policies of the Judicial Conference.... Each of plaintiff's proposed employment classes have Leave Act benefits administered by a different authority."). By contrast, in this case, Plaintiffs seek to certify a class comprised of a single type of employee, nurses, alleged to be entitled without exception, much less multiple exceptions, to a benefit under a single authority, 38 U.S.C. § 7453(h).[9] *See* 38 U.S.C. § 7453(h) (containing no exceptions); Pls.' Mot. to Certify at 1 (limiting class to nurses).

In *Busby School*, plaintiffs attempted to certify an opt-out class. *See Busby School of Northern Cheyenne Tribe*, 8 Cl.Ct. at 603 ("[E]ven if class action status were permitted in this case, *plaintiffs' request for an 'opt out' class action* would be denied." (emphasis added)). There, the trial court observed that: "A better alternative exists whereby numerous litigants possessing similar claims can consolidate their individual actions thereby providing for the necessary individualized damage determinations. Such a procedure would be required in any event. Having it done initially eliminates more problems than would be the case of having it done later as a class." *Id.* Although the *Busby* court recognized the need for individual damage determinations, denial of class certification was based on a request for a type of class action no longer permitted under RCFC 23 and concerns related to a different requirement, *i.e.*, "superiority." *See Barnes*, 68 Fed.Cl. at 500 (discussing superiority and finding, "[U]nder this court's rules, there is no way, other than a class action, to ensure consolidation of cases before a single judge that do not qualify as directly related cases under RCFC 40.2(a)(1), as would be the case here.").

The Government also fails to explain why potential damages may be speculative in this case. *See, e.g., Taylor*, 41 Fed.Cl. at 444 ("In cases where a money judgement is sought against the United States, the court requires individual proof of the amount of money damages. This requirement is based on the belief that only individual plaintiffs can meet the burden of proof for damages when there is a waiver of sovereign immunity, which is always present in this court. While a valid concern, this rationale principally implicates the determination of money damages. In this case, the court can certify the class to determine whether the government is liable to class members for separation pay. Later, if necessary, the court can use a formula to determine damages for individual class members. If the determination of damages becomes too speculative or encumbered by individual factual issues, the court can decertify the class for the determination of money damages." (internal citations omitted)). Moreover, were the need for individual damages calculations determinative, "there scarcely would be a case that would qualify for class status in this court." *See Barnes*, 68 Fed.Cl. at 498 ("And while defendant stresses that each class member individually would have to prove his or her damages with particularity, its is noteworthy that this court has employed damage estimations in other cases, and conceivably could employ similar

---

9. Thereby, avoiding both a potential bar to "commonality" and "non-money mandating" jurisdictional issues. *Compare* 38 U.S.C. § 7453 (governing several types of premium pay for nurses, including mandatory on-call pay) *with* 38 U.S.C. § 7457 (authorizing on-call pay for social workers, dieticians, and vocational rehabilitation specialists as discretionary).

principles here. *See generally, Franconia Associates v. U.S.,* 61 Fed.Cl. 718, 770 & n. 93 (2004) (discussing the jury verdict method of establishing damages); *Health Ins. Plan of Greater N.Y. v. United States,* 62 Fed.Cl. 33, 43–47 (2004) (extrapolating damages derived from samples of computer data).").

### c. The United States Has Refused To Act On Grounds Generally Applicable To The Proposed Class.

■ A class action may only be maintained where "the United States has acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(1). In this case, Plaintiffs allege a system wide practice of providing after-hours clinical coverage by utilizing nurses to field calls, without on-call pay. *See* Pls.' Mot. to Certify at 6. In support, Plaintiffs submitted two Government-prepared exhibits showing the VHA utilized the proposed class members to field after-hours calls in order to provide after-hours clinical coverage. *See* Ex. B (chart detailing after-hours calls policies and procedures); Ex. C (Narrative Supplement to Ex. B, identifying VA Medical Centers that utilize nurses to provide after-hours clinical coverage, without on-call pay). Those exhibits are *prima facie* evidence that the Government failed to compensate proposed class members with on-call pay, contrary to the requirements of 38 U.S.C. § 7453(h). Accordingly, Plaintiffs have satisfied their burden of showing that the United States has refused to act on grounds generally applicable to the class.

For these reasons, the court has determined that all three elements of the "commonality" requirement have been met in this case.

### 3. The "Typicality Requirement."

■ The claims of the representative parties must be "typical of the claims of the class." RCFC(a)(3). The threshold for "typicality" also is not high. *See Fisher,* 69 Fed.Cl. at 200 ("The threshold requirement for typicality is also not high.")(citing *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir.1993); *Berkley v. United States,* 45 Fed.

Cl. 224, 232 (1999) ("In the past, the typicality requirement in the *Quinault* test has not been found to be unusually restrictive.")).

In this case, Plaintiffs have established that the claims asserted by the representative parties are typical of the claims of the proposed class. Plaintiffs are nurse case managers working in the Hudson Valley VHA Health Care System. *See* Pls.' Aff. ¶ 2. Plaintiffs allege that the VHA requires that they field after-hours calls, without on-call pay. *See* Pls.' Aff. ¶ 3 ("Since in or about mid 1998, I have been required by my supervisors at the Hudson Valley VA Health Care facility to be on-call to meet the care needs of my patients. I was told that this on-call duty was part of my job duties and I was expected to handle telephone calls regarding my patients outside my usual working hours[.]"). The proposed class will consist of similarly situated nurses, *i.e.,* VHA nurses required to field after-hours calls in order to meet the VHA's "24 hour clinical coverage," without receiving on-call pay. *See* Compl. ¶ 19 ("Plaintiffs and other similarly situated individuals"); *see also* Pls.' Mot. to Certify at 1, 2–6.

Plaintiffs' proposed class definition, however, encompasses all potential claims by VHA nurses for on-call pay, not only those claims based on an alleged requirement to field after-hours calls. *See* Pls.' Mot. at 1 (proposing a class of "all nurses, as that term is used and defined in Title 38, Chapter 74 of the United States Code, who were employed by the Veterans Health Administration (VHA), between April 24, 1998 and the entry of judgment in this case[ ], who have not received on-call pay for any hours that they were officially scheduled to be on call, and scheduled to perform on-call duty, outside of their regular work hours."). The Government, in conceding that Plaintiffs' claims are typical of at least a segment of potential claims from the VHA nurse population, highlights the problem of the scope of Plaintiffs' proposed class definition. *See* Gov't Opp. at 14 ("Indeed, most of the proposed class member's claims would be markedly dissimilar from plaintiffs' claims[,] because only thir-

ty-nine out of VA's 35,000 registered nurses have performed the type of WHEN hours duty that plaintiffs claim to have performed."). The court, however, can address this issue by limiting the class to nurses with claims based on fielding after-hours calls. *See* RCFC 23(c)(1)(B) (requiring the court, not the Plaintiff, to "define the class and the class claims, issues, or defenses").

In the alternative, the Government argues that Plaintiffs are not typical of the proposed class, because they are not all entitled to on-call pay. *See* Gov't Opp. at 7–9. This argument, however, goes to the merits, not class certification. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140 ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class action rule are met."); *see also* Gov't Opp. at 8–10 (relying on the legal conclusions of VHA employees and analogies to cases addressing on-call pay under Title 5 to conclude, "[P]laintiffs did not perform official on-call duty .... As a result, they cannot represent any class of nurses[.]"). The Government, however, correctly identifies the differences between the policies and procedures at various VA Medical Centers regarding after-hours calls may exclude Plaintiffs from the class. That possibility, however, does not prevent certification at this juncture. *See* Gov't Opp. at 8–10; *see also East Texas Motor Freight Sys. Inc.*, 431 U.S. at 406 n. 12, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (holding that a class action was not inappropriate where subsequent events at trial undermine the named plaintiffs' individual claims). In the event that the factual distinctions between the policies and procedures for fielding after-hours calls are determinative as to whether nurses at a particular VA Medical Center were "officially scheduled to be on-call," within the meaning of 38 U.S.C. § 7453(h), the court may address that issue by altering or amending the class definition prior to entry of a final judgment. *See* RCFC 23(c)(1)(C) ("An order under RCFC 23(c)(1) may be altered or amended before final judgment.").

### 4. The "Adequacy Requirement."

■ The representative parties also must "fairly and adequately protect the interests of the class." RCFC 23(a)(4). The threshold inquiry is whether class counsel is "qualified, experienced and generally able to conduct the litigation." *Barnes*, 68 Fed.Cl. at 499 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2nd Cir. 1992)). In this case, Plaintiffs have submitted evidence establishing that the counsel they retained are qualified. *See* Ex. F (containing information on firm and individual counsel). Plaintiffs' counsel are Mr. Seth Lesser and Ms. Fran L. Rudich of Locks Law Firm, PLLC, a law firm with extensive experience litigating class actions. *See* Ex. F at 1–2 (describing the firm's experience). Mr. Seth Lesser, a partner with the firm, is a 1988 *magna cum laude* graduate of Harvard Law School and lead counsel or co-lead counsel in a number of nationwide class action lawsuits. *Id.* at 4–7. Ms. Rudich, an associate with the firm, is a 1986 graduate of Hofstra University School of Law and "concentrates her practice in complex litigation and class action matters, with a particular emphasis in representing employees." *Id.* at 3.

The second inquiry is whether Plaintiffs and the proposed class members are free from conflicting interests. *See Barnes*, 68 Fed.Cl. at 499 ("[C]lass members must not have interests that are antagonistic to one another, serving to uncover conflicts of interest between named parties and the class they seek to represent." (internal citations omitted)). To address this issue, Plaintiffs submitted affidavits denying any knowledge of a conflict of interest between themselves and the class they seek to represent. *See* Pls.' Aff. In addition, the affidavits state that Plaintiffs are "committed to vigorously prosecut[ing] this case and represent[ing] the proposed class." *Id.*

The Government does not challenge either the qualifications or ability of Plaintiffs' counsel adequately to represent the class, Plaintiffs' commitment to prosecuting the case, or suggest that the nature of the claim entails inherent conflicts of interest between class

members. The Government, however, argues that:

> Although only 39 VA nurses [10] have performed the same type of WHEN hours service that plaintiffs claimed to have performed, the proposed class identified by plaintiffs contemplates an indeterminate number of VA nurses who may have performed any type of *officially scheduled overtime without compensation.* Plaintiffs have made no showing whatsoever that they can fairly and adequately represent the interests of such a vast and dissimilar class. Moreover, requiring the United States to defend against the claims of so many unidentified individuals who have yet to demonstrate any interest in this litigation would be unfair and unjust.

Gov't Opp. at 15–6 (emphasis added). This argument, however, does not address the "adequacy" of Plaintiffs' representation of the proposed class. Plaintiffs seek to represent all nurses "who have not received *on-call* back pay for any hours that they were officially scheduled to be on call, and scheduled to perform on-call duty, outside their regular hours," not nurses who have been denied overtime pay. *See* Pls.' Mot. at 1 (emphasis added). Accordingly, Plaintiffs seek to represent a class allegedly entitled to on-call pay under 38 U.S.C. § 7453(h), not overtime pay under 38 U.S.C. § 7453(e).

To the extent the Government's argument on adequacy is concerned with the potential that Plaintiffs' proposed class definition encompasses all claims, not just those related to fielding after-hours calls, that concern is addressed in the court's class certification order. Finally, to the extent that the Government is concerned about unidentified class members, those concerns ignore the distinction between FRCP 23 and RCFC 23, *i.e.,* that the later provides only for opt-in class actions. For these reasons, the court has determined that the "adequacy requirement" of RCFC 23(a)(4) is met in this case.

### 5. The "Superiority Requirement."

■ A class action must also be "superior to *other available methods* for the fair and efficient adjudication of the controversy." RCFC 23(b)(2) (emphasis added). Under FRCP 23, the "superiority requirement" is met when "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *See Barnes,* 68 Fed.Cl. at 499 (quoting Fed. R. Civ. P. 23 Advisory Comm. Note (1966 amendment, subdivision (b)(3))). RCFC 23 recites a similar list of factors: "[U]nder this prong of the analysis, the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Id.*

Given that joinder under RCFC 20(a) is not possible in this case, the "superiority" analysis is limited to a comparison between the benefits of individual litigation versus those of a class action. Plaintiffs have established that they similarly are situated to the potential class of nurses that they seek to represent. *See* Ex. B and Ex. C. This similarity indicates that there is little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings.

The Government acknowledges that there is some benefit of not requiring the court to respond to duplicative filings that would be generated by individual suits, but the Government does not concede the "superiority" of a class action, because it perceives the proposed class as not being manageable. *See* Gov't Opp. at 10–11. This argument, however, is not supported by the evidence and overlooks the import of the opt-in only nature of class actions under RCFC 23. Accordingly, the court is satisfied that the "superiority requirement" has been met.

---

**10.** The Government's assertion that only thirty-nine VHA nurses have performed the same type of WHEN hours services as Plaintiffs presumably is derived from Exhibits B and C. The court's examination of Exhibits B and C, however, indicates discrepancies that suggest the proposed

class may include forty-five to one-hundred nurses. *See* Ex. B (chart indicating by VA Medical Centers the number of nurses requested or required to field after-hours calls); Ex. C (Narrative Summary of Ex. B).

## CONCLUSION

For these reasons, the Plaintiffs' Motion for Class Certification is **GRANTED, in part,** and **DENIED, in part.**

The Plaintiff class will consist of persons who are:

1. nurses, as defined in Title 38, Chapter 74 of the United States Code;

2. were employed by the Veterans Health Administration after April 24, 1998;

3. have been requested or required to field after-hours calls and/or electronic pages; and

4. did not receive on-call pay, as required under 38 U.S.C. § 7453(h).

The claim for determination is whether the Veterans Health Administration's use of nurses to field after-hours calls is an "officially scheduled" on-call, within the meaning of 38 U.S.C. § 7453(h).

The relief requested is for back-pay under 38 U.S.C. § 7453(h).

The Locks Law Firm, PLLC (110 East 55th Street, New York, New York, 10022), is appointed as class counsel. *See* RCFC 23(c)(1)(B) ("An order certifying a class action must define the class and the class claims, issues or defenses, and must appoint class counsel under RCFC 23(g).").

On or before April 30, 2006, the parties will file a Joint Status Report indicating how this case should proceed, including a proposed method and schedule for meeting the class notice requirements of RCFC 23(c).

**IT IS SO ORDERED.**